FILED

2010 Oct-22  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY JOHNSON, an individual** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | |
| **REGIONAL ADJUSTMENT BUREAU,** | ) | **CV-2010-K-2631-S** |
| **INC., a Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, in the above styled cause, and files her Amended Complaint against the Defendant states and alleges as follows:

1.  This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and out of state law violations and out of the invasions of Plaintiff's personal and financial privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiff.

2.  Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.  15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)     There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)     Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)     **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)     Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)     It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## PARTIES

3.      Plaintiff Kimberly Johnson (hereinafter "Plaintiff") is a natural person who is a resident of Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

4.      Defendant Regional Adjustment Bureau, Inc., ("Defendant" or "RAB") is a foreign debt collection firm that engages in the business of debt collection. It conducts business in Alabama.  Its principal place of business is in the State of Tennessee and it is incorporated in Tennessee.

## FACTUAL ALLEGATIONS

5.    Plaintiff and/or Plaintiff's mother allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

6.    Plaintiff's mother took out a loan with 5th3rd Bank for an automobile for personal use of her daughter so that she could obtain a better interest rate than she otherwise could on her own.

7.    Plaintiff was allowed to use the automobile and was the primary driver of the automobile.

8.    Plaintiff and her mother agreed that Plaintiff would make the payments on the vehicle.

9.    Plaintiff and her mother allegedly fell behind on the payments on the vehicle.

10.    The Defendant was assigned and/or purchased the debt allegedly owed by Plaintiff and/or Plaintiff's mother.

11.    Defendant was not the original creditor on this loan and did not make this loan with plaintiff and/or plaintiff's mother.

12.  In early to mid July 2010, and employee, agent or representative of RAB, whose exact identity is unknown to Plaintiff[1], contacted Plaintiff and Plaintiff's mother to collect the debt on the vehicle.

13.  In attempting to contact plaintiff, RAB, through its employees, contacted and/or discussed the debt Plaintiff allegedly owed with family, friends and/or co-workers of the Plaintiff.

14.  Defendant contacted Plaintiff while she was at her place of employment.

15.  Plaintiff informed Defendant that this was not a convenient time or place to discuss the matter as she did not have privacy at work.

16.  Defendant continued to and insisted on discussing the debt collection matter with Plaintiff while she was at work despite its knowledge that she had asked them not to do so.

17.  The employee, agent or representative (hereinafter "Defendant" or "RAB") stated that they were from RAB calling to collect the alleged debt to 5[th]3rd Bank.

18.  In the process of attempting to collect the debt, Defendant represented that the vehicle was in repossession status.

---

[1] Plaintiff believes this may have been a female employee named Melissa Cook.  However, Plaintiff is not certain of the identity of the employee that made the representations as the person may have been using an alias and Plaintiff believes she spoke with more than one person.

19.   Defendant told Plaintiff that forced placed insurance was on the automobile even though Plaintiff explained the car was already insured and had been insured.

20.   Defendant told Plaintiff that if she did not pay the $743.00 for insurance fees they would repossess the automobile and that it could be straightened out later and the unnecessary payment would be a "credit" toward future monthly payments.

21.   Defendant told Plaintiff the loan was behind and that Plaintiff needed to pay $1,917.00 or they would repossess the automobile.

22.   Defendant represented to Plaintiff that she must make a payment or payment arrangement to prevent the vehicle from being repossessed at that time.

23.   Plaintiff stated that she did not have the money at that time, but was expecting a refund related to her student loans before the end of the month.

24.   Defendant insisted that the payment arrangement had to be set up that day in order to avoid repossession.

25.   Plaintiff informed Defendant that she was concerned that she would not have enough money in her checking account to cover the draft from Defendant if the refund was delayed for any reason.

26.   Defendant assured Plaintiff that at any time before the draft date on or about July 30, 2010, she could cancel the draft.

27.    In reliance on this representation, Plaintiff agreed to a "check by phone" to be dated for the end of the month.

28.    She agreed to this based on the representation that if she did not do so, her vehicle would be repossessed.

29.    She agreed to the post-dated "check by phone" based on the representation and belief that she could stop the draft if the money was not going to be in her account.

30.    At all relevant times Defendant treated Plaintiff as if this debt was Plaintiff's obligation and therefore Plaintiff is a consumer as defined by the FDCPA.

31.    On or about July 27 or July 28, 2010, Johnson found out that the refund check was not going to be issued in time to be in her account when the "check by phone" was scheduled to be drafted, on or about July 30, 2010.

32.    Johnson contacted RAB on or about July 28, 2010 to cancel the draft.

33.    Johnson was told by a representative and/or supervisor of RAB that the draft could not be cancelled and would not be cancelled.

34.    Johnson was told by a representative and/or supervisor of RAB that once the draft is set up that it cannot be canceled.

35.    Defendant failed and/or refused on multiple occasions to give the mini-miranda and other disclosures as required when leaving voicemails for Plaintiff in its efforts to collecting the debt.

36.     Defendant ran the payment through at least twice and caused Plaintiff to incur overdraft fees and other charges.

37.     Defendant did not notify Plaintiff in writing of its intent to deposit the post dated check or "check by phone" or instrument not more than ten nor less than three business days prior to the deposit.

38.     Defendant did not have permission or consent to take money out of Plaintiff's account.

39.     Defendant's misconduct caused damage to the Plaintiff.

40.     The Defendant's misconduct was designed to harm the Plaintiff as Defendant acted with full knowledge of the damage this type of misconduct will cause.

41.     Defendant was successful in its plan, scheme, design, and did in fact cause severe damages to Plaintiff.

42.     Defendant has expressed no remorse and has offered no apology to Plaintiff for any of its wrongful actions but instead has displayed an attitude of arrogance and contempt towards Plaintiff.

## SUMMARY

43.     All of the above-described collection communications made to third parties by Defendant and collection agents of Defendant were made in violation of numerous and multiple provisions of the FDCPA including, but not limited to, the following:  15 U.S.C. § 1692(b), 1692(c), 1692(d), 1692(e) and 1692(f).

44.   The above-detailed conduct by this Defendant of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by an intrusion upon seclusion and a violation of other state laws and resulted in actual damages to the Plaintiff.

45.   The collection calls by Defendant and its agents caused Plaintiff enormous stress and anguish as a result of these calls.

46.   Defendant's repeated attempts to collect this debt from Plaintiff and refusal to stop violating the law was an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

47.   Defendant's illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff and caused Plaintiff unnecessary distress.

48.   Plaintiff has suffered actual damages as a result of these illegal collection communications by this Defendant in the form of anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, and loss of money which was due to the illegal conduct of Defendant.

49.   The only way that abusive debt collectors like Defendant will stop their abusive practices towards consumers is by a jury verdict fully compensating Plaintiff for the harm done to Plaintiff and by a punitive damage award in excess of $250,000.

50.   A punitive damage award in excess of $250,000 will get the attention of Defendant and other abusive debt collectors so that they will realize that it no longer makes economic sense to abuse consumers and to gain an unfair competitive advantage over honorable, law abiding collectors.

51.   A full compensatory damage award and a full punitive damage award will accomplish the goals of Congress in passing the FDCPA - stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

## RESPONDEAT SUPERIOR LIABILITY

52.   The acts and omissions of Defendant's agents who communicated with Plaintiff as more further described herein, were committed within the line and scope of their agency relationship with their principal the Defendant.

53.   The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

54.    By committing these acts and omissions against Plaintiff, these other debt collectors were motivated to benefit their principal the Defendant.

55.    Defendant is therefore liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Alabama tort law, in their attempts to collect this debt from Plaintiff.

## NEGLIGENT AND WANTON HIRING AND SUPERVISION

56.    Defendant negligently and/or wantonly hired, retained, trained or supervised incompetent debt collectors and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

57.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58.    The acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff.

59.    Upon information and belief, Defendants and/or its employees, agents and representative violated section 1692b of the Act by communicating with

third parties, namely friends, family and/or co-workers as alleged above regarding the alleged debt of Johnson and in doing so failed to comply with some or all of subsections (1), (2) and (3).

60.   Defendants and/or its employees, agents and representative violated section 1692c of the Act as alleged above by communicating with Johnson at a time it knew or should have know was inconvenient, and at Johnson's place of employment in violation of this section.

61.   Defendants and/or its employees, agents and representative violated section 1692d of the Act as alleged above by including but not limited to using misrepresentations regarding the status of the loan and vehicle, using misrepresentations regarding the payment and Johnson's ability to cancel the payment, by refusing to cancel the payment when it knew she did not have have the funds to cover the payment, by refusing to cancel the payment when it knew it did not or no longer had Johnson's permission to process the payment.

62.   The above conduct resulted as a natural consequence in the harassment, oppression and abuse of Johnson.

63.   Defendants and/or its employees, agents and representative violated section 1692e of the Act as alleged above by including but not limited to using misrepresentations regarding the status of the loan and vehicle, using

misrepresentations regarding the payment and Johnson's ability to cancel the payment, by refusing to cancel the payment when it knew she did not have have the funds to cover the payment, by refusing to cancel the payment when it knew it did not or no longer had Johnson's permission to process the payment.

64. The above actions resulted in violation of subsections of 1692e, including but not limited to, more specifically, (2)(A), (4), (5), (10), (11).

65. Defendants and/or its employees, agents and representative violated section 1692f of the Act as alleged above by including but not limited to using misrepresentations regarding the status of the loan and vehicle, using misrepresentations regarding the payment and Johnson's ability to cancel the payment, by refusing to cancel the payment when it knew she did not have have the funds to cover the payment, by refusing to cancel the payment when it knew it did not or no longer had Johnson's permission to process the payment.

66. The above actions resulted in violation of subsections of 1692f, including but not limited to, more specifically, subsections (1), (2) and (5).

67. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); (2) actual

and compensatory damages; and, (3) reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## COUNT II

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

68. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

69. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant violated Alabama state law as described in this Complaint.

70. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

71. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the**

> **privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

72. Defendant and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

73. Defendant and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

74. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

75. The conduct of this Defendant and its agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by this Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

76. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant.

77.   All acts of Defendant and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant is subject to punitive damages.

## COUNT III

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

78.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

79.   Defendant negligently, wantonly, and/or intentionally hired, retained, trained or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV

### NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT VIOLATING ALABAMA STATE LAW

80.   All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

81.   Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

82.   Defendant violated all of the duties Defendant had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

83.   It was foreseeable, and Defendant did in fact foresee it, the actions of the Defendant would lead and did lead to the exact type of harm suffered by Plaintiff.

84.   Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff.

85.   Defendant invaded the privacy of Plaintiff as set forth in Alabama law.

86.   Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

87.   As a result of this conduct, action, and inaction of Defendant, Plaintiff has suffered damage as set forth in this Complaint.

## COUNT V

## MISREPRESENTATION AND SUPRESSION OF MATERIAL FACTS

88.   All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

89.     Defendant, through an unknown employee[2], simply identified as an employee of RAB, represented to plaintiff in phone conversations in early to mid July 2010, that the car was at that in "repossession status."

90.     Defendant, through an unknown employee, simply identified as an employee of RAB, represented to plaintiff in phone conversations in early to mid July 2010 that if Plaintiff did not make an immediate payment or payment arrangement that the car could be repossessed at any moment.

91.     Plaintiff later learned after RAB had attempted to process the post-dated "check by phone" that in fact the car was **not** in repossession status at the time of those conversations.

92.     Defendant and/or its employees knew or had reason to know the car was not in repossession status at that time.

93.     Defendant, through an unknown employee, simply identified as an employee of RAB,  promised during phone conversations with the plaintiff in early to mid-July 2010 to not run the transaction through if Plaintiff called a few days ahead of the July 30, 2010 transaction date if she was unable to make the payment.

---

[2] Plaintiff believes this may have been a female employee named Melissa Cook.  However, Plaintiff is not certain of the identity of the employee that made the representations as the person may have been using an alias and Plaintiff believes she spoke with more than one person.

94.   Plaintiff reasonably and justifiably relied on this representation of a material fact (Plaintiff would not have allowed Defendant access to Plaintiff's account had Plaintiff known the truth).

95.   Defendant knew these representations were untrue and had no intent to and would not cancel the transaction as represented in the event Plaintiff were to call with a request to cancel.

96.   Defendant suppressed the truth from Plaintiff that her vehicle was in fact not in repossession status at the time of the conversations in early to mid July 2010.

97.   Defendant suppressed the truth so that Plaintiff would rely on the representation and make a payment or payment arrangement.

98.   Plaintiff was damaged when Defendant violated these representations.

99.   Plaintiff requested and demanded Defendant not run the transaction through when Plaintiff called Defendant on or about July 27 or 28, 2010 but Defendant refused to honor its earlier promise to Plaintiff.

100.   Defendant suppressed the truth that it was going to run the transaction even if Plaintiff said not to run it.

101.   Plaintiff reasonably and justifiably relied on the suppression of this material fact (Plaintiff would not have ever given the initial authorization had Plaintiff known the truth) and was damaged by Defendant's misconduct.

102.   Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct related to the misrepresentations and suppressions of material facts has proximately caused the damages set forth in this Complaint.

## COUNT VI

### CONVERSION AND/OR TRESPASS TO CHATTEL

103.   All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

104.   Plaintiff contacted Defendant on or about August 27, 2010 and informed Defendant that it was not authorized to access Plaintiff's checking account at Legacy Credit Union in the amount of $1,917.01.

105.   Defendant refused Plaintiff's instructions to not access the money in Plaintiff's account.

106.   Defendant willfully, intentionally, and with malice took action to pull the $1,917.01 from Plaintiff's account even though Plaintiff informed Defendant that the funds were not available to pay the $1,917.01.

107.   Defendant repeatedly attempted to pull the money from Plaintiff's account and this resulted in charges to Plaintiff's account, including NSF charges, due to the actions of the Defendant.

108. Defendant was successful in obtaining some of Plaintiff's money illegally and Defendant exercised dominion and control over Plaintiff's assets and/or deprived Plaintiff of having dominion and control over Plaintiff's assets.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant.

- for such other and further relief as may be just and proper.

## COUNT II

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

- for an award of actual damages from Defendant for the all damages including emotional distress suffered as a result of the intentional, reckless,

and/or negligent invasions of privacy in an amount to be determined at trial for Plaintiff;

- punitive damages; and

- for such other and further relief as may be just and proper.

## COUNT III

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

- for an award of actual damages from Defendant for all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent hiring, retaining, training and supervision of incompetent debt collectors in an amount to be determined at trial for Plaintiff;

- punitive damage; and

- for such other and further relief as may be just and proper.

## COUNT IV

### NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT VIOLATING ALABAMA STATE LAW

- for an award of actual damages from Defendant for the all damages including emotional distress suffered as a result of the intentional, wanton or negligent conduct, in an amount to be determined at trial for Plaintiff;

- punitive damages; and

- for such other and further relief as may be just and proper.

## COUNT V

### MISREPRESENTATION AND SUPRESSION OF MATERIAL FACTS

- for an award of actual damages from Defendant for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent misrepresentation and suppression of material facts in an amount to be determined at trial for Plaintiff;

- punitive damages; and

- for such other and further relief as may be just and proper.

## COUNT VI

### CONVERSION AND/OR TRESPASS TO CHATTEL

- for an award of actual damages from Defendant for the all damages including emotional distress suffered as a result of the conversion and/or trespass to chattel in an amount to be determined at trial for Plaintiff;

- punitive damages; and

- for such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ John G. Watts

**John G. Watts (WAT056)**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, PC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring (HER037)**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

## <u>CERTIFCATE OF SERVICE</u>

I hereby certify that I have served a true and exact copy of the foregoing via this court's CM/ECF electronic filing and service system and by U. S. Mail, postage prepaid on all counsel of record on this **22nd Day of October, 2010.**


John W. Scott
Morgan M. Sport
SCOTT, DUKES & GEISLER, P.C.
2100 Third Avenue North, Ste 700
Birmingham, Alabama 35203
jscott@scottdukeslaw.com
msport@scottdukeslaw.com


/s/ M. Stan Herring
**Attorney for Plaintiff**